UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OCEANA, INC.,<br>        Plaintiff,<br><br>    v.<br><br>GINA RAIMONDO, et al.,<br>        Defendants. | Case No. 21-cv-05407-VKD<br><br>**ORDER RE REMEDY**<br>Re: Dkt. Nos. 62, 63, 64, 67, 69 |

Plaintiff Oceana, Inc. ("Oceana"), a non-profit ocean conservation and advocacy organization, filed this suit against Secretary of Commerce Gina Raimondo, the National Oceanic and Atmospheric Administration ("NOAA"), and the National Marine Fisheries Service ("NMFS"), challenging defendants' management of the Pacific sardine under the Magnuson-Stevens Fishery Conservation and Management Act ("MSA"), 16 U.S.C. § 1801 *et seq.*, and the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.* The parties filed cross-motions for summary judgment, which the Court granted in part and denied in part on April 22, 2024. *See* Dkt. No. 57; Dkt. No. 72 (corrected). While the Court concluded that several aspects of NMFS's plan (also referred to as "Amendment 18") to rebuild the Pacific sardine's population after it was declared overfished in 2019 violated the MSA, NEPA, and the Administrative Procedures Act ("APA"), it deferred decision on an appropriate remedy, and invited the parties to submit additional briefing on this topic. *Id.* at 35.

The parties have now submitted briefs in support of their competing proposals regarding

remedies. Dkt. Nos. 62, 64, 67.[1]  The Court held a hearing on the parties' proposals on June 25, 2024. Dkt. No. 71.

**I.      BACKGROUND**

The factual and legal background of this dispute is described in detail in the Court's April 22, 2024 summary judgment order and will not be repeated here. *See* Dkt. No. 57 at 2-12. As reflected in that order, the Court concluded that while the rebuilding target set by NMFS does not violate the MSA, defendants have not shown that Amendment 18 will rebuild the sardine population in the statutory timeframe and that Amendment 18 will prevent overfishing. The Court also concluded that NMFS failed to fully comply with NEPA. Specifically, the Court made the following determinations:

1.      NMFS's decision to set the rebuilding target for the Pacific sardine at 150,000 mt does not violate the MSA because the record shows that NMFS did not fail to use the best available science (claim 1);

2.      NMFS's evaluation of three alternatives to rebuild the Pacific sardine population within the statutory timeframe was arbitrary and capricious, and its adoption of a rebuilding plan that relies on conservation and management measures, rather than acceptable biological catch ("ABC")/annual catch limits ("ACL"), violates the MSA (claim 2);

3.      In preparing Amendment 18, NMFS did not use the best available science when it relied exclusively on the CalCOFI temperature index to calculate $E_{MSY}$ and set the overfishing limit ("OFL"), and then used that limit in setting the annual specifications (claim 3);

4.      NMFS failed to take the hard look required by NEPA by relying on inconsistent assumptions and by ignoring important aspects of the proposed rebuilding plans under consideration (claim 4);

5.      While NMFS prepared an adequate environmental assessment ("EA") regarding the

---

[1] Additionally, Oceana moves to expedite proceedings, asking the Court to rule on the question of remedy before June 30, 2024. Dkt. No. 63. Defendants oppose this motion, arguing that a decision before that date is unnecessary. Dkt. No. 65. Oceana also requests judicial notice of several matters that post-date the Court's summary judgment order. Dkt. No. 69. Defendants oppose this request. Dkt. No. 70.

2

impact of Amendment 18 on marine predators generally, it failed to take a hard look at the impact of the rebuilding plan on the endangered humpback whale, as required by NEPA (claim 5);

6. While NMFS's EA was deficient in several respects, the record was not sufficient for the Court to determine that an EIS was required (claim 6); and

7. NMFS's determination that Amendment 18 and the annual specifications required no EFH consultation was not arbitrary and capricious (claim 7).[2]

Oceana asks the Court to vacate Amendment 18, in part, as well as the associated EA stemming from NMFS's flawed NEPA analysis. Dkt. No. 62 at 15, 25. Oceana then proposes "two phases of relief." *Id.* at 1. First, it asks the Court to "order NMFS to promulgate an interim annual catch limit set at a level that prevents overfishing and rebuilds the sardine population within 30 days of the Court's order on remedy." *Id.* at 2. Noting that the 2024-2025 fishing season begins on July 1, 2024, Oceana asks the Court to issue a ruling before that date. *Id.*; *see also* Dkt. No. 63 (motion to expedite). Second, in the longer term, Oceana asks the Court to order NMFS to accomplish the following by June 1, 2025: "(1) develop and implement a new method to calculate the overfishing limit, acceptable biological catch, and annual catch limit that prevents overfishing and ensures rebuilding; and (2) develop and implement a new rebuilding plan that prevents overfishing and ensures rebuilding, and complete a new NEPA analysis that takes the required hard look at the plan's impacts." Dkt. No. 62 at 1.

Defendants argue that the Court should remand Amendment 18 to NMFS, without vacatur, and instruct the agency to prepare a compliant rebuilding plan within two years. Dkt. No. 64 at 1. They also request that, if the Court concludes that vacatur is warranted, that Amendment 18 only be partially vacated. *Id.* at 24.

The parties agree that it is unnecessary for the Court to vacate or remand with respect to the 2023-2024 annual specifications, as those are due to expire after June 30, 2024. Dkt. No. 62 at 4; Dkt. No. 64 at 5-6. They also agree that it is unnecessary for the Court to vacate the portions of

---

[2] Because the 2023-2024 annual specifications implement Amendment 18, the Court concluded that those specifications suffer from the same deficiencies as Amendment 18 itself (claim 8).

3

1  Amendment 18 that were not challenged or as to which Oceana's challenge was unsuccessful.
2  Dkt. No. 64 at 10; Dkt. No. 67 at 5.

## II. DISCUSSION

The Court first considers whether and to what extent vacatur is the appropriate remedy as opposed to remand without vacatur. The Court then considers the question of an appropriate deadline for compliance on remand, and whether other equitable relief is warranted.

### A. Vacatur and Remand

The presumptive remedy for violations of the APA and NEPA is vacatur. 5 U.S.C. § 706; *350 Montana v. Haaland*, 50 F.4th 1254, 1273 (9th Cir. 2022). However, when equity demands, the Court has discretion to leave a defective agency action in place on remand. *Solar Energy Indus. Ass'n v. FERC*, 80 F.4th 956, 997 (9th Cir. 2023).

In deciding whether to remand without vacating a defective agency action, the Ninth Circuit directs courts to apply the two-factor balancing test prescribed in *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Commission*, 988 F.2d 146, 150-51 (D.C. Cir. 1993). *Id.* That test requires a court to: (1) weigh the seriousness of the agency's errors against (2) the disruptive consequences of an interim change that may itself be changed. *Id.* (quotations omitted).[3]

With respect to the first part of the *Allied-Signal* test, a court must not "evaluate the seriousness of the agency's error in the abstract." *Id.* Instead, it must "ask 'whether the agency would likely be able to offer better reasoning or whether by complying with procedural rules, it could adopt the same rule on remand, or whether such fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand.'" *Id.* (quoting *Pollinator Stewardship Council v. EPA*, 806 F.3d 520, 532 (9th Cir. 2015)). Here, the defects in the agency's action cannot be characterized as "procedural." NMFS's failure to adopt a rebuilding plan for the Pacific sardine that complies with the MSA and its implementing regulations threatens the

---

[3] Defendants suggest that a different standard should apply, arguing that vacatur is appropriate "only in accordance with the traditional balancing of equitable considerations." Dkt. No. 64 at 7-8 (citing *United States v. Texas*, 599 U.S. 670, 702 (2023) (Gorsuch, J. concurring)). The Court declines to apply a standard that differs from the one adopted by the Supreme Court and the Ninth Circuit.

4

agency's ability to accomplish its principal statutory objective when a fishery is declared overfished—i.e., to rebuild the fishery within the statutory timeframe and prevent overfishing from occurring. 16 U.S.C. § 1853(a)(1) (FMPs must "contain the conservation and management measures . . . which are necessary and appropriate . . . to prevent overfishing and rebuild overfished stocks, and to protect, restore, and promote the long-term health and stability of the fishery . . . ."); 16 U.S.C. § 1854(e)(3)(A) (purpose of plan "to end overfishing immediately in the fishery and to rebuild affected stocks of fish"). Similarly, the agency's failure to conduct and prepare an EA that complies with NEPA is a serious error, particularly given that the defective EA in this case omits consideration of the impact of the rebuilding plan on an endangered species. *Solar Energy Indus. Ass'n*, 80 F.4th at 997; *Klamath-Siskiyou Wildlands Ctr. v. Bureau of Land Mgmt.*, 387 F.3d 989, 997 (9th Cir. 2004) (agency failed to fully consider effects on threatened northern spotted owl habitat, invalidating the EA); *see also Klamath-Siskiyou Wildlands Ctr. v. Nat'l Marine Fisheries Serv.*, 109 F. Supp. 3d 1238, 1244 (N.D. Cal. 2015) (serious error where "NMFS failed to evaluate the proposed action's short-term impacts" to threatened coho salmon).

With respect to the second part of the *Allied-Signal* test, a court must consider "'whether vacating a faulty rule could result in possible environmental harm' . . . and the disruptive impact of vacatur." *Ctr. for Food Safety v. Regan*, 56 F.4th 648, 668 (9th Cir. 2022) (quoting *Pollinator Stewardship Council*, 806 F.3d at 532). Remand without vacatur may be appropriate when leaving the prior rule in place "maintains 'the enhanced protection of the environmental values.'" *Id.* (quoting *Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 188 (D.C. Cir. 2017)). Here, defendants concede that vacating those portions of Amendment 18 that Oceana successfully challenged would have no disruptive consequences. *See* Dkt. No. 64 at 12; Dkt. No. 71. Moreover, as the 2023-2024 annual specifications that implement Amendment 18 are due to expire after June 30, 2024, whether the Court vacates those limits is effectively moot. *See* Dkt. No. 62 at 4; Dkt. No. 64 at 6; Dkt. No. 71.

Oceana additionally requests that the EA prepared in connection with Amendment 18 be vacated. Dkt. No. 62-1 at 2. Defendants agree that, as a practical matter in preparing a rebuilding plan that complies with the Court's April 22, 2024 order, the agency will need to prepare a new

1    EA on remand. Dkt. No. 71.

2        The Court thus finds no circumstances weighing against application of the standard

3    remedy of vacatur. *See Pollinator Stewardship Council*, 806 F.3d at 532 (quoting *Cal. Cmtys.*

4    *Against Toxics v. EPA*, 688 F.3d 989, 994 (9th Cir. 2012)) ("We order remand without vacatur

5    only in 'limited circumstances.'"). The Court therefore vacates those sections of Amendment 18

6    that the Court concluded violated the MSA and APA, as reflected in the April 22, 2024 summary

7    judgment order, and also vacates the EA prepared in connection with Amendment 18 in its

8    entirety.

### B. Deadline for Compliance on Remand

10       Neither party disputes that the Court has discretionary authority to set a deadline for

11   NMFS to promulgate a compliant rebuilding plan on remand. *See* Dkt. No. 62 at 21; Dkt. No. 64

12   at 4-5; *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 524 F.3d 917, 937 (9th Cir.

13   2008) (noting that "NMFS [did not] challenge the court's discretionary authority to impose a

14   deadline for the remand proceedings."); *Intertribal Sinkyone Wilderness Council v. Nat'l Marine*

15   *Fisheries Serv.*, No. 1:12-cv-00420 NJV, 2013 WL 8374150, at *2 (N.D. Cal. Nov. 26, 2013)

16   ("Ninth Circuit precedent expressly permits imposition of deadlines on the remand process.").

17   The parties disagree about what that deadline should be. Oceana asks the Court to set a deadline

18   of June 1, 2025, approximately 13 months from the date of the summary judgment order. *See* Dkt.

19   No. 62 at 21. Defendants asks the Court to set a deadline of two years from the date of the

20   summary judgment order. *See* Dkt. No. 64 at 4-5.

21       In support of their respective positions, the parties refer the Court to deadlines provided in

22   the MSA. Defendants observe that once a fishery is identified as overfished, the MSA requires

23   the regional council to "prepare and implement a fishery management plan, plan amendment, or

24   proposed regulations . . . to end overfishing immediately in the fishery and to rebuild affected

25   stocks of fish." 16 U.S.C. § 1854(e)(3)(A); *see* Dkt. No. 64 at 6. NMFS regulations also give the

26   regional council a two-year deadline to "develop and implement a new or revised rebuilding plan"

27   if NMFS determines that a fishery is not making "adequate progress" towards rebuilding. 50

28   C.F.R. § 600.310(j)(3)(iv). Defendants argue that they should be afforded the full two-year period

contemplated by the statue for preparation of a compliant rebuilding plan. Dkt. No. 64 at 6-7. Oceana counters that the MSA also provides that if the regional council fails to prepare a rebuilding plan that meets the criteria of § 1854(e)(3)(A)—i.e., a plan that ends overfishing immediately and rebuilds the stock—the Secretary must prepare a suitable rebuilding plan within nine months. 16 U.S.C. § 1854(e)(5); Dkt. No. 67 at 6-7. Oceana argues that its proposal aligns with the statutory directive that requires the agency to act in a more expedited fashion if the council fails to complete its work within two years. *Id.*

While the Court is not persuaded that the MSA speaks directly to the circumstances presented here, the statutory periods the parties identify are informative. The Court's April 22, 2024 order did not find that all aspects of Amendment 18 were unlawful, and in addressing the deficiencies the Court did find, NMFS is not starting with a blank slate. The rebuilding target for the Pacific sardine need not be reconsidered, and the council and NMFS have many years of data and research available concerning the abundance and productivity of the Pacific sardine over time and in different environmental conditions. The compliance period Oceana advocates, which is approximately 13 months from the Court's April 22, 2024 order, is more generous than the statutory period requiring the Secretary to act within nine months in the event the council fails to prepare a rebuilding plan. Defendants have made no showing that compliance with the Court's April 22, 2024 order will require a full two years of work or, conversely, that the necessary work cannot be completed by June 1, 2025. Indeed, as defendants note, "the remand process has already begun." Dkt. No. 64 at 5. At the June 25, 2024 hearing, defendants acknowledged that they are "not necessarily disputing that one year might be feasible" and "the intention of the agency is to do whatever it can in one year." Dkt. No. 71. Defendants advised, however, that the time period Oceana proposes "will . . . limit[] . . . how often [engagement with the council] will occur." *Id.* On the record presented, the Court concludes that Oceana's proposed deadline affords the agency a reasonable period of time to prepare a compliant rebuilding plan, conduct an EA, and obtain public comment. *See, e.g., Nat. Res. Def. Council v. Locke*, No. C 01-0421 JL, 2010 WL 11545702, at *27 (N.D. Cal. Apr. 23, 2010) (setting deadline of one year for agency to publish new annual specifications); *Oceana v. Ross*, 483 F. Supp. 3d 764, 788 (N.D. Cal. 2020) (NMFS

ordered to promulgate a new catch rule in 120 days); *Coastal Conservation Ass'n v. Gutierrez*, 512 F. Supp. 2d 896, 902 (S.D. Tex. 2007) (deadline of nine months to promulgate a new rebuilding plan).

Accordingly, the Court concludes that NMFS must prepare and implement a compliant rebuilding plan for the Pacific sardine, and conduct the necessary NEPA analysis, by June 1, 2025.

### C. Additional Equitable Relief

As part of the reassessment process on remand, Oceana asks that the Court order NMFS "to implement a new method for setting the overfishing limit, the acceptable biological catch, and annual catch limit for the Pacific sardine." Dkt. No. 62-1 at 2. Additionally, in the short term, Oceana requests the Court order that "[w]ithin 30 days of this Order, the National Marine Fisheries Service shall promulgate an interim annual catch limit set at a level that prevents overfishing and rebuilds the sardine population." *Id.* at 1. Defendants oppose any direction requiring NMFS to implement a "new method," and object to any proposed instruction that specifies the content or timing of the process for setting amended annual specifications for 2024-2025. Dkt. No. 64 at 18-20.

"The district court has broad latitude in fashioning equitable relief when necessary to remedy an established wrong." *Alaska Ctr. for Env't v Browner*, 20 F.3d 981, 986 (9th Cir. 1994). This authority extends beyond simply "declar[ing] that the requirement exists and repeat[ing] that it must be followed." *Nat'l Res. Def. Council v. SW Marin, Inc.*, 236 F.3d 985, 1000 (9th Cir. 2000). While a court should "leave the substance and manner of achieving [the] compliance entirely" to the agency, *Alaska Ctr. for Env't*, 20 F.3d at 986, it may, "in some circumstances, require specific actions from an agency on remand." *Nat'l Wildlife Fed'n*, 524 F.3d at 937. In deciding whether to order specific action, the court may consider "the agency's conduct on earlier remands and the urgency of the listed species' situation." *Id*. The additional relief Oceana requests beyond vacatur and remand requires the Court to consider whether further intervention or direction by the Court is warranted.

Oceana asks the Court to "order NMFS to investigate alternative methods for determining the OFL, ABC, and ACL, and implement a method to set catch limits that is based on the best

1  available science and prevents overfishing." Dkt. No. 67 at 1.  Specifically, Oceana suggests that

2  the Court prohibit NMFS from employing the "CalCOFI-based $E_{MSY}$" in setting catch limits.  Dkt.

3  No. 62 at 13; Dkt. No. 67 at 1, 7-8.  The Court concludes that such an order would require the

4  Court to direct the agency on "the substance and manner of achieving [] compliance," *Alaska Ctr.*

5  *for Env't*, 20 F.3d at 986.  The Court declines to do so.  *See Ross*, 483 F. Supp. 3d at 788 ("The

6  Court will not dictate the substance of any new catch rule on remand.").  The agency and its

7  experts must reassess the rebuilding plan and determine how to meet the requirements of the MSA

8  in view of the Court's order; the Court lacks the scientific or technical expertise to make such a

9  determination.  *See United Cook Inlet Drift Ass'n v. Nat'l Marine Fisheries Serv.*, No. 3:21-cv-

10  00247-JMK, 2023 WL 3467496, at *2 (D. Alaska May 15, 2023).

11  Oceana also asks the court to "direct NMFS to establish an interim ACL for the 2024-2025

12  fishing year . . . that complies with the Court's April 22 holding" within 30 days.  Dkt. No. 67 at 1.

13  To the extent that Oceana asks the Court to order compliance with its order, such a request is

14  redundant.  NMFS has an obligation to comply with the Court's order on remand, and the Court

15  will not approve an additional direction that "appears to elevate certain aspects" of its order.

16  *United Cook Inlet Drift Ass'n,* 2023 WL 3467496, at *2.  Beyond this, Oceana has not shown that

17  circumstances require specific additional instructions to the agency.  Unlike in *National Wildlife*

18  *Federation*, the record does not indicate a history of a failure to achieve compliance on remand.

19  *See* 524 F.3d at 937-38.  In its April 22, 2024 order, this Court clearly stated its findings regarding

20  the agency's errors.  NMFS has represented to the Court that it is preparing the 2024-2025 annual

21  specifications in compliance with these findings.  Dkt. No. 64 at 5-6; Dkt. No. 71.  On this record,

22  the Court declines to direct how the agency shall achieve compliance with respect to the 2024-

23  2025 annual specifications.

24  However, at the June 25 hearing, the Court was alerted to an issue of significant concern to

25  both parties and the public.  *Nat'l Wildlife Fed'n*, 524 F.3d at 937.  Defendants advised that, in

26  view of the timing of the Court's summary judgment order with respect to the expiration of the

27  current 2023-2024 annual specifications, the annual specifications for the 2024-2025 fishing year

28  will not be in effect before the expiration of the 2023-2024 specifications on June 30, 2024.  As a

United States District Court
Northern District of California

result, after the expiration, no specifications will be in place to protect the Pacific sardine population until the new annual specifications are approved and implemented. At the June 25, 2024 hearing, the parties agreed that a gap in these specifications is undesirable and could be harmful.

Given the Court's "broad latitude to fashion[] equitable relief," *Alaska Ct. for Env'l*, 20 F.3d at 986, especially if such relief is "carefully tailored," *Nat'l Wildlife Fed'n*, 524 F.3d at 937, and "reasonably calculated 'to remedy an established wrong,'" *Nat Res. Def. Council*, 236 F.3d at 1000 (quoting *Alaska Ct. for Env'l*, 20 F.3d at 986), the Court finds targeted intervention appropriate to address this narrow circumstance. Accordingly, the Court directs NMFS to implement interim specifications[4] effective July 1, 2024 that are no less restrictive than the 2023-2024 specifications.[5] Such specifications shall take effect upon the expiration of the 2023-2024 specifications beginning on July 1, 2024 and shall remain in effect through August 1, 2024 unless NMFS promulgates the 2024-2025 annual specifications before that date. The Court will require defendants file a status report no later than July 26, 2024 to update the Court as to whether the 2024-2025 specifications will be implemented by August 1, 2024, and if not, the date on which they will be implemented. The Court will determine at such time whether further relief is

---

[4] Under the MSA, the Secretary "may promulgate emergency regulations or interim measures necessary to address [an] emergency or overfishing" upon his or her identification that "an emergency exists or that interim measures are needed to reduce overfishing." 16 U.S.C. § 1855(c). These emergency regulations are proper where "the immediate benefits outweigh the value of . . . the normal rulemaking process" and can be justified "to prevent overfishing as defined in a Fishery Management Plan." *Policy Guidelines for the Use of Emergency Rules*, 62 Fed. Reg. 162, 44421-01 (Aug. 21, 1997). While some courts in this Circuit have been reluctant "to order Defendants to exercise their discretionary power to adopt emergency regulations," *United Cook Inlet Drift Ass'n*, 2023 WL 3467496, at *2 (quoting *Pac. Dawn, LLC v. Bryson*, No. C10-4829 TEH, 2012 WL 554950, at *3 (N.D. Cal. Feb. 21, 2012)), others have found such actions to be both "within the Court's equitable authority . . . to mandate affirmative relief that serves the interests of justice and the public interest" and permitted under § 1861 of the MSA, which allows courts to "take such . . . actions as are in the interest of justice." *Locke*, 2010 WL 11545702, at *25; 16 U.S.C. § 1861(d)(4).

[5] To the extent that the Court's order can be characterized as injunctive relief, the circumstances prescribed satisfy the requirements for such relief. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The parties agree that the absence of specifications is "likely" to cause irreparable harm and that it would be in the public interest to avoid a period where no specifications have been set. These specifications not only provide protection for the Pacific sardine population but also serve as crucial guidance to fisheries and other stakeholders.

warranted.

**III.  CONCLUSION**

For the reasons discussed above, the Court hereby:

1. VACATES those portions of Amendment 18 found to violate the MSA and the APA pursuant to the Court's April 22, 2024 order (Dkt. No. 57);

2. VACATES the environmental assessment prepared in connection with Amendment 18 in its entirety;

3. REMANDS to the agency for further proceedings consistent with this order and the Court's April 22, 2024 order (Dkt. No. 57);

4. ORDERS NMFS to prepare and implement a compliant rebuilding plan for the Pacific sardine, and conduct the necessary NEPA analysis by **June 1, 2025**; and

5. ORDERS NMFS, upon expiration of the 2023-2024 annual specifications to implement interim specifications through August 1, 2024 that are no less restrictive than the current 2023-2024 annual specifications.

Additionally, the Court DENIES AS MOOT Oceana's Motion to Expedite (Dkt. No. 63).  The Court further DENIES Oceana's Request for Judicial Notice (Dkt. No. 68) of matters outside the record before the Court as unnecessary to this decision.

**IT IS SO ORDERED.**

Dated:  June 28, 2024

VIRGINIA K. DEMARCHI
United States Magistrate Judge